Cynthia A. Franklin
The Law Office of Bradly A. Carlson, L.L.C
345 G. St, Suite 100 #558
Anchorage, AK 99501
P: (907) 677-8111
F: (907) 917-2075
Email: cindy@bcarlsonlaw.com

CJA Counsel for Defendant Craig King

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CRAIG KING,<br><br>    Defendant. | Case No.: 3:19-cr-00026-TMB-DMS<br><br>**MOTION TO DISTRICT COURT TO REVOKE MAGISTRATE'S DETENTION ORDER** |

  COMES NOW, The Defendant Craig King ("Craig"), by and through his attorney of record, Cynthia A. Franklin of The Law Office of Bradly A. Carlson, L.L.C., hereby moves the District Court to revoke or amend the detention order entered by Magistrate Smith on April 3, 2019. Subsequent bail motions presented before Magistrate Smith were denied. This motion is supported by the following memorandum and proposed order revoking the order of detention and setting a hearing for the Magistrate to determine conditions of release and enter a release order.

## **MEMORANDUM**

The issue before the Magistrate at the bail hearing was whether there were any release conditions that would reasonably assure Craig's appearance at trial and/or not endanger the safety of any other person or the community.[1] Although the charged offenses are both a crime of violence and carry a maximum sentence of life imprisonment or death, Craig's history did not give rise to the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community.[2]

The Magistrate's Detention Order indicates that the decision to detain Craig in the absence of any presumption was made based on a number of factors. Several of the factors considered refer to Craig's criminal history. The factor of the weight of the evidence against Craig and whatever the Government relayed to the Magistrate concerning Craig's alleged role in the charged offenses remains a mystery. Those representations were made to the Magistrate in an ex parte hearing in which the defense was not permitted to participate or question the information or witness statements regarding those important matters.

In this motion to revoke the Magistrate's Order of Detention, Craig asserts that the Government clearly misrepresented his criminal history to the Magistrate in light of defense review of his APSIN record. The other factors used to detain Craig unconstitutionally violate his right to confront and question witnesses under *Crawford v. Washington*[3]. In addition, the weight of the evidence against Craig should be the least important factor in deciding to detain him until trial[4].

---

[1] 18 U.S.C. § 3142(c)(1).
[2] *Id.* at (e)(2).
[3] *Crawford v. Washington*, 541 U.S. 36 (2004).
[4] *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

Page 2 of 11

Case 3:19-cr-00026-TMB-DMS   Document 288   Filed 10/22/19   Page 2 of 11

### 1. The District Court Must Determine *De Novo* Whether Detention is Proper

When a district court reviews a magistrate's pretrial detentions order, the court is acting de novo and must determine on its own whether or not detention is proper. The district court does not owe deference to the magistrate's findings.[5]

### 2. The Detention Order Inaccurately Reflects Craig's Criminal History

The Magistrate's Detention Order states the following factors related to Craig's criminal history as justification for his continued detention:

a. Weight of evidence against the defendant is strong;

b. Subject to lengthy period of incarceration if convicted;

c. Prior criminal history;

d. Participation in criminal activity while on probation, parole or supervision;

e. History of alcohol or substance abuse;

f. Prior failure to appear in court as ordered ("5 times");

g. Prior attempt to evade law enforcement ("Presentation of false ID to police");

h. Use of alias or false documents;

i. Prior violations of probation, parole, or supervised release ("6 Probation Violations"); and

j. Other Reasons or Further Explanations;

"3 Driving While License Suspended"

"1 Felony Theft By Deception"

---

[5] *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985)(en banc)

"Seriousness of the Offense"

Nearly all of the listed factors relate to Craig's criminal history. After extensive review of Craig's APSIN record provided in discovery, undersigned counsel cannot find convictions and evidence to support the findings made by the magistrate who clearly relied solely on the Government's representations. *See* Declaration of Counsel in Support of Appeal of Magistrate's Detention Order.

Specifically, Craig has never been convicted of a felony. The alleged Theft By Deception referred to in the order was an arrest in 1984 that did not result in conviction. The absence of any felony convictions and any violent offenses whatsoever in Craig's history has been glossed over in an attempt to lump Craig into a picture painted by the Government of each co-defendant in the case being equally dangerous and violent. This picture simply does not apply to Craig.

Craig has never been on supervised probation or parole, so the "6 probation violations" referenced are unsupported by the actual criminal history. The only known probation violation was the commission of a new DWLS (Driving While License Suspended) while on unsupervised misdemeanor probation for DWLS in 2001. Clearly, the inclusion on the magistrate's detention order form of the factor of "Prior violations of probation, parole, or supervised release" is intended to encompass conduct where an accused has violated additional rules imposed beyond not committing new offenses. The inclusion of unsupported and non-existent probation violations is an attempt by the Government to bolster its dangerousness argument against Craig, but the actual conduct does not fit in the represented category.

Page 4 of 11

Case 3:19-cr-00026-TMB-DMS   Document 288   Filed 10/22/19   Page 4 of 11

The allegation that Craig failed to appear in court "5 times" is unsupported by his criminal history. Craig has no convictions for failure to appear on his criminal history, and only one conviction for False ID to Police, in 2001. Craig has only one probation revocation, from 2001, rather than the six probation violations referenced in the detention order. The magistrate's reference to use of alias(es) or false documents uses the same incident checked for "attempt to evade law enforcement" essentially allowing the Government to double dip by having the magistrate use one misdemeanor conviction for False ID to satisfy two separate considerations on the detention order and again exaggerating Craig's criminal history well out of proportion.

The use of weight of the evidence against Craig is addressed below in the discussion of Craig's inability to challenge or confront whatever evidence was presented to the magistrate on this point. The additional note by the magistrate regarding "seriousness of the offense" is the same consideration as "subject to lengthy incarceration if convicted." It is clear that the charges are serious. What is not as clear is Craig's role in the alleged offense and organization. As stated in the Declaration of Counsel, a review of the "1488" organizations rules and qualifications released by the Government through discovery shows that Craig ticks none of the requisite boxes, including the fact that the organization is allegedly a prison gang and Craig has never been to prison.

Finally, the offense at hand was alleged to have been committed on August 3, 2017. Craig was interviewed regarding the alleged events in 2017 but was not arrested until April of 2019. It is of note that he had no violations, arrests, or convictions in the interim.

### 3. The Government Bears the Burden to Prove Dangerousness

The magistrate's detention order reflects a finding by clear and convincing evidence that there are no conditions of release which could ensure the public's safety from Craig. This finding without the presence of either presumption placed Craig in a "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably ensure the safety of the community or other persons."[6] The Government bears the burden of showing this level of dangerousness by proof that Craig actually poses a danger to the community, not that Craig in theory poses a danger.[7] There are several examples of where the Government has met that high burden, including cases where the defendant was on parole with three prior convictions for violent offenses and in possession of firearms at the time of his arrest[8], where the defendant had made threats to the witnesses[9], and where the evidence was presented that a defendant had nine priors, including assaultive behavior and drug offenses, and was in possession of a partially loaded firearm.[10] Other examples include cases where there was evidence of prior criminal record including used of firearms[11] and where evidence was presented that defendants were veteran drug traffickers with prior felony drug convictions and prior convictions involving dangerous weapons.[12]

---

[6] 1994 U.S.C.C.A.N. 3182, 3189.
[7] *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1989)
[8] *United States v. Simpkins*, 826 F.2d 94, 96-097 (D.C. Cir. 1987)
[9] *United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987)
[10] *United States v. Bayko*, 774 F.2d 516, 521 (1st Cir. 1985)
[11] *United States v. Warren*, 787 F.2d 1237, 1238 (8th Cir. 1986)
[12] *United States v. Williams*, 753 F.2d 329 (4th Cir. 1985)

Craig's criminal history does not include offenses involving firearms, evidence of drug trafficking, or any violent crimes. The government did not meet its burden in proving Craig dangerous by clear and convincing evidence and in accordance with previous case law.

### 4. The *Ex Parte* Nature of Proceedings Has Deprived Craig of his Right of Confrontation of the Witnesses Regarding His Detention

The United States Supreme Court has interpreted the defendant's rights at a detention hearing as being subject to sufficient procedural safeguards to withstand a due process attack. The court has referred to a detention hearing as a "full-blown adversarial hearing" during which the government must convince a "neutral decision maker.[13]

In Craig's case, he was not permitted to cross-examine any witnesses against him or even hear the evidence the Government proffered as proving his dangerousness. Instead, the Government moved ex parte for Craig's detention and invoked this process at subsequent bail hearings. Because the evidence was received by the magistrate in this fashion, Craig still does not know what evidence or witnesses were offered to prove the weight of the evidence against him or what precisely proves he is so dangerous as to justify his detention pending trial.

Although some courts have found that the rights specified in Section 3142(f) of the Bail Reform Act do not provide a defendant with an absolute right to subpoena witnesses at a detention hearing, there are circumstances under which showing the unreliability of

---

[13] *United States v. Salerno*, 481 U.S. 739, 742 (1987)

government hearsay evidence may invoke the magistrate's duty to require more substantive support than a proffer for the government's contentions.[14]

Here, since Craig does not know what statements or other evidence were proffered by the government to convince the magistrate of the weight of the evidence against him, he cannot make a proffer showing the unreliability of the hearsay evidence or to attempt to subpoena non-appearing government witnesses to negate the government's contentions of dangerousness.

In order to properly consider the "weight of the evidence" factor in Section 3142(g)(2), it may be necessary to open up the issue of probable cause because that is a question of evidentiary weight.[15] The court can prevent the hearing from becoming a full-blown trial but should exercise discretion "in the recognition that a pretrial detention may restrict for a significant time the liberty of a presumably innocent person".[16] In this case, Craig was detained in April of 2019 and his trial is currently set for September 8, 2020, a detention of a minimum of eighteen months without an opportunity to confront or question any evidence of his supposed dangerousness.

In spite of some authority for the Government to proceed by proffer in detention hearings, "it is the court and not the government that determines whether proceeding by proffer is acceptable in a given detention hearing."[17] Though proffers may be appropriate in the majority of cases, where the reliability of a witness is central to the decision regarding

---

[14] *Unites States v. Delker*, 757 F.2d 1390, 1397-1398 (3d Cir. 1985)
[15] *United States v. Hurtado*, 779 F.2d 1467, 1479-1480 (11th Cir. 1985)
[16] *Delker*, 757 F.2d at 1398
[17] *United States v. Hammond*, 44 F. Supp. 2d 743, 744 (D. Md. 1999)

detention, the defendant should be afforded the right to confront adverse witnesses.[18] In Craig's case, the entirety of any alleged evidence against him is built from government informants, making the reliability of a witness or witnesses central to the decision to detain him. Determining which witnesses were relied upon by the magistrate is impossible because the Government's proffer was made *ex parte*.

Although some courts have allowed the use of hearsay presented in camera in support of detention,[19] better reasoned authority has held that in camera submissions are improper absent extraordinary circumstances.[20] In the *Abuhamra* decision, the Second Circuit sets forth a six-part test for the district court to apply before accepting *ex parte* submissions. There is no evidence that the magistrate applied this test to the government's in camera proffer before accepting it as grounds to detain Craig. The Third Circuit has held that in camera presentation of materials as a general matter is "inconsistent with the Bail Reform Act's procedural protections.[21] While there may be rare times when in camera submissions would be permitted given a compelling need, relevant decisions concerning the reliability of informants raise a serious doubt about the legitimacy of any decision allowing in camera reliance on confidential informant testimony.[22]

### 5. Conclusion and Request for Relief

Craig's case involves the unconstitutional layering of an in camera Government proffer on undisclosed informant's statements, ensuring his inability to confront the alleged

---

[18] *Id.*
[19] *United States v. Acevedo-Ramos*, 755 F.2d 203, 208-09 (1st Cir. 1985)
[20] *United States v. Abuhamra*, 389 F.3d 309, 332 (2d Cir. 2004)
[21] *United States v. Accetturo*, 783 F.2d 382, 390 (3d Cir. 1986)
[22] *See United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993)

proof of the weight of the evidence against him and of his dangerousness. When coupled with a gross exaggeration to the magistrate by the Government of Craig's criminal history as outlined above, this court should revoke the Magistrate's Order of Detention and direct the magistrate to determine conditions of release for Craig under the Bail Reform Act.

Respectfully submitted this 22nd day of October 2019.

/S/ Cynthia A. Franklin
345 G. St, Suite 100, #558
Anchorage, AK 99501
P: (907) 677-8111
F: (907) 917-2075
Alaska Bar No. 0710057

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of October 2019, a true and accurate copy of the Motion to Revoke Magistrate's Detention Order has been caused to be served via electronic filing to the parties, including:

AUSA Andrew James Klugman
AUSA William Arthur Tayler

/S/ Cynthia A. Franklin
Cynthia A. Franklin