# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>                v.<br><br>FILTHY FUHRER, ROY NAUGHTON,<br>GLEN BALDWIN, COLTER O'DELL,<br>CRAIG KING, and BEAU COOK,<br><br>                             Defendants. | Case No. 3:19-cr-00026-TMB-DMS<br><br><br>ORDER ON DEFENDANT NAUGHTON'S<br>MOTION TO CHANGE VENUE<br>[DKT. 661] |

## I. INTRODUCTION

The matter comes before the Court on Defendant Roy Naughton's Motion to Change Venue (the "Motion") in which Co-defendants Justin Eaton, Colter O'Dell, Glen Baldwin, and Filthy Fuhrer join.[1] The Government filed a Response in opposition ("Opposition").[2] The Court finds that the Motion is suitable for disposition without oral argument. Accordingly, after consideration of the Parties' pleadings and the record before the Court, for the reasons discussed below, Naughton's Motion is **DENIED**.

## II. BACKGROUND

The procedural history of this case is set forth at length in various other docket entries and will not be repeated here.[3]

---

[1] Dkts. 661 (Motion); 663 (Eaton's Joinder in Dkt. 661); 664 (O'Dell's Joinder in Dkt. 661); 665 (Baldwin's Joinder to in Dkt. 661); 666 (Fuhrer's Joinder in Dkt. 661).

[2] Dkt. 667 (Opposition).

[3] *See, e.g.*, Dkts. 389 (Order re Motions to Sever); 668 (Report & Recommendation).

1

In his Motion, Naughton requests that trial be moved outside of the District of Alaska and held in the Western District of Washington, in Seattle or Tacoma, or in a district of the Court's choosing.[4] Naughton argues that a change of venue is needed to: (1) better physically accommodate a large complex trial in the midst of a pandemic; (2) empanel a jury that has not been tainted by significant pretrial publicity; and (3) ease logistical concerns for Seattle/Tacoma-based counsel, including attorneys for Defendants Eaton, Naughton, O'Dell, and Fuhrer.[5] Naughton raises security concerns regarding the Court's suggestion that, given the size of the case, it may hold the trial outside of a courthouse, possibly in a conference room or at a convention center.[6] Naughton also notes that when the case was initially filed, the Government estimated trial length would be 4–6 weeks; that estimate has now doubled to 10–12 weeks.[7]

In opposition, the Government argues that the COVID-19 pandemic is not a reason to change the venue, especially given that Alaska currently has a lower death rate, a higher testing rate, a lower daily positive rate, and a faster vaccine rollout than Washington.[8] Additionally, a transfer would require the people of Seattle or Tacoma to defer their judicial business until the end of a lengthy trial with no connection to their district.[9] Second, the Government argues that Naughton has not demonstrated prejudicial pretrial publicity sufficient to warrant a change of

---

[4] Dkt. 661 at 1.

[5] *Id.* at 1, 3–4.

[6] *Id.* at 3–4.

[7] *Id.* at 3.

[8] Dkt. 667 at 13–14.

[9] *Id.* at 15.

2

venue.[10] The District of Alaska, Anchorage Division is large and diverse enough to mitigate the risk of prejudice, and the media coverage of the proceedings have not been unfairly prejudicial or inflammatory.[11] Additionally, insofar as the media coverage is potentially prejudicial, it is unclear how moving the venue to Seattle or another part of Washington state would mitigate this problem, as the case has received similar coverage in these places.[12] The Government also contends that the age of articles or coverage of the victim's death—approximately three years—weighs against a finding of prejudice.[13]

Third, the Government argues that convenience to counsel, at the inconvenience of others including the Government, case agents and witnesses, does not justify moving the trial out of Alaska.[14] Transferring the trial out of Alaska would not be "in the interest of justice" and would, instead, be contrary to the intent of the Sixth Amendment and the interests of the people of Alaska to adjudicate crimes that took place within the state.[15] Finally, the Government points out that Defendants Craig and Felicia King have not joined the Motion, and the Court cannot transfer venue

---

[10] *Id.* at 3–4, 10–11.

[11] *Id.* at 5–9.

[12] *Id.* at 10.

[13] *Id.*

[14] *Id.* at 11–12.

[15] *Id.* at 13.

3

over their objections.¹⁶ Severance of these Defendants would be required.¹⁷ Therefore, the Government requests that the Court deny the Motion.¹⁸

### III. LEGAL STANDARD

The Sixth Amendment requires that criminal trials take place in the judicial district where the charged offense took place.¹⁹ However, a defendant may request a change of venue for trial in the two circumstances enumerated by Federal Rule of Criminal Procedure ("Rule") 21:

> **(a) For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.
>
> **(b) For Convenience.** Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.²⁰

"District courts have a 'healthy measure' of discretion when determining whether to grant a motion under Rule 21,"²¹ and the burden is on the defendant to establish the need for a change of venue.²²

---

¹⁶ *Id.* at 12.

¹⁷ *Id.*

¹⁸ *Id.* at 2, 15.

¹⁹ U.S. Const. amend. VI; Fed. R. Crim. P. 18 (Place of Prosecution & Trial).

²⁰ Fed. R. Crim. P. 21.

²¹ *United States v. Mujahid*, No. 3:09-cr-00053-TMB, 2011 WL 13250643, at *2 (D. Alaska Sept. 23, 2011) (citing *Skilling v. United States*, 561 U.S. 358, 378–80 (2010); *United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996)).

²² *See United States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977).

## IV. ANALYSIS

Naughton has failed to show that the alleged prejudice caused by media coverage, the inconvenience to defense counsel, or the COVID-19 pandemic is sufficient to warrant a change of venue. Accordingly, the Motion is **DENIED**.

Here, Naughton argues that a change of venue is needed to: (1) better physically accommodate a large complex trial in the midst of a pandemic; (2) empanel a jury that has not been tainted by significant pretrial publicity; and (3) ease logistical concerns for Seattle/Tacoma-based counsel, including attorneys for Defendants Eaton, Naughton, O'Dell, and Fuhrer.[23] The Court addresses each argument in term.

First, a global pandemic weighs against, not in favor of, a transfer given the physical location of witnesses, personnel, attorneys, and Defendants and considering the need to minimize travel. Additionally, as the Government correctly points out, by numerous scientific metrics, Alaska appears to be handling the COVID-19 pandemic as well or better than Washington state.[24] States are in the process of inoculating residents with the new COVID-19 vaccine, and the District of Alaska is currently working toward a solution to accommodate a trial of this size. Finally, it would be unreasonable to monopolize limited court time and resources in a busy neighboring district merely because of the need for a larger space.

Second, the Court is unconvinced it will be unable to empanel jury that has not been tainted by significant pretrial publicity. When evaluating prejudice as a basis for transfer to another

---

[23] Dkt. 661 at 1, 3–4.

[24] *See, e.g.*, Centers for Disease Control and Prevention, COVID-19 Cases and Deaths by State, Last 7 days, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Jan. 13, 2021); Centers for Disease Control and Prevention, New Deaths Attributed to COVID-19, https://covid.cdc.gov/covid-data-tracker/#compare-trends_newdeathsper100k (last visited Jan. 13, 2021); *see also* Dkt. 667 at 13–14.

5

district, the transferring court must be satisfied "that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."[25] To justify a change of venue based on pretrial publicity, a defendant must demonstrate either actual or presumed prejudice.[26] To establish actual prejudice, the defendant must demonstrate that the jurors exhibited "actual partiality or hostility that could not be laid aside."[27] Presumed prejudice, on the other hand, occurs "when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime."[28] It is not required, "that the jurors be totally ignorant of the facts and issues involved . . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."[29] As the Supreme Court has noted, district courts have denied requests to transfer venue of extremely high-profile cases "'involving substantial pretrial publicity and community impact,'" including the prosecutions for the 1993 World Trade Center bombing.[30]

Here, because the parties have not yet selected a jury, Naughton cannot claim actual prejudice.[31] Naughton also fails to show presumed prejudice. The actions underlying the case

---

[25] Fed. R. Crim. P. 21(a).

[26] *United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996).

[27] *Harris v. Pulley*, 885 F.2d 1354, 1363 (9th Cir. 1988), *cert. denied,* 493 U.S. 1051 (1990)

[28] *Id.* at 1361; *Jeffries v. Blodgett,* 5 F.3d 1180, 1189 (9th Cir. 1993), *cert. denied,* 510 U.S. 1191 (1994) (Prejudice is rarely presumed "because 'saturation' defines conditions found only in extreme situations.").

[29] *Skilling*, 561 U.S. at 441 (citations and internal quotation marks omitted).

[30] *Mujahid*, No. 3:09-cr-00053-TMB, 2011 WL 13250643, at *2 (quoting *Skilling*, 561 U.S. at 378 n.11).

[31] *See Murray v. Schriro*, 882 F.3d 778, 802–03 (9th Cir. 2018) (Actual prejudice occurs "if, during voir dire, potential jurors who have been exposed to pretrial publicity express bias or hostility

occurred several years ago and coverage of the events would likely be a distant memory to most individuals in the District by the time a jury is empaneled.[32] Additionally, the majority of articles Naughton cites to as evidence of prejudice do not appear to be hyperbolic or inflammatory.[33] Based on the coverage cited, it does not appear anything remotely approaching a "barrage of inflammatory publicity" has infected the atmosphere or that "public passion" renders a fair trial unlikely.[34] Further, in the District of Alaska, the Anchorage area—where a trial would likely be held—is a large municipality spread across several diverse communities with a substantial pool of potential jurors to draw from.[35]

Third, Rule 21(b) contemplates inconvenience to "the parties, any victim, and the witnesses,"[36] not inconvenience to lawyers representing the parties. Additionally, as the

---

toward the defendant that cannot be cast aside."); *Bergna v. Benedetti*, 721 F. App'x 729, 730 (9th Cir. May 3, 2018) (unpublished opinion).

[32] *See* Dkt 661 at 6–7 (citing various new articles from local media outlets covering the present case); *see Hayes v. Ayers*, 632 F.3d 500, 509 (9th Cir. 2011) ("The Supreme Court has repeatedly recognized that the passage of significant time between adverse press coverage and a defendant's trial can have 'a profound effect on the community and, more important, on the jury, in softening or effacing opinion.'") (quoting *Patton v. Yount,* 467 U.S. 1025, 1033 (1984)); *Bergna*, 721 F. App'x 730–31 (66 news articles did not establish presumptive prejudice where the articles were at least five months old by the time of trial and were largely factual in nature); *see also Skilling*, 561 U.S. at 383 (no presumed prejudice where "the decibel level of media attention diminished somewhat" in the four years between Enron's bankruptcy and former executive's trial).

[33] *See* Dkt 661 at 6–7 (citing various news articles from local and nonlocal media outlets covering the present case); *see also Sherwood*, 98 F.3d at 410; *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998) (Media sources that are "primarily factual, as such accounts tend to be less prejudicial than inflammatory editorials or cartoons."), *opinion amended on denial of rehearing*.

[34] *Murray*, 882 F.3d at 802 (internal quotation marks and citations omitted); *Ainsworth*, 138 F.3d at 795.

[35] *See Mujahid*, No. 3:09-cr-00053-TMB, 2011 WL 13250643, at *5.

[36] Fed. R. Crim P. 21(b).

7

Government points out, transferring the case would require the attorneys for the Government, case agents, and dozens of witnesses to travel to Seattle at great expense and inconvenience.[37] A change of venue that transfers the trial out of Alaska would not be "in the interest of justice."[38] Instead, such a transfer is contrary to the intent of the Sixth Amendment and the interests of the people of Alaska to adjudicate crimes that took place wholly within the state.[39]

Accordingly, the Motion for Change of Venue is **DENIED**.

## V. CONCLUSION

Naughton has failed to carry his burden of demonstrating the need for a transfer of venue. Therefore, for the foregoing reasons, Naughton's Motion at Docket 661 is **DENIED.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 22nd day of January, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[37] Dkt. 667 at 11–12.

[38] *See* Fed. R. Crim. P. 21(b).

[39] *See* Fed. R. Crim. P. 18; *see also United States v. Schoor*, 597 F.2d 1303, 1308 (9th Cir. 1979).